IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GAVCO MATERIALS, INC.,                    No.

*Electronically Filed*

          Plaintiff,

    v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

          Defendants.

# NOTICE OF REMOVAL EXHIBIT "1"

# E-MAIL WITH COURTESY COPY OF COMPLAINT

| | |
|---|---|
| **From:** | Garner.Steve.F <SteveGarner@westfieldgrp.com> |
| **Sent:** | Friday, March 16, 2018 11:50 AM |
| **To:** | Garner.Steve.F |
| **Subject:** | FW: Gavco Materials, Inc.; Policy No.: CMM 1097129; Claim No.: R CMM 1097129 111913 A |
| **Attachments:** | Acceptance of Service - Westfield.pdf; 2018-03-01 - Complaint.pdf |

**From:** Phillip R. Earnest [mailto:pre@Pietragallo.com]
**Sent:** Thursday, March 08, 2018 1:38 PM
**To:** garner.steve@westfieldgrp.com
**Subject:** Gavco Materials, Inc.; Policy No.: CMM 1097129; Claim No.: R CMM 1097129 111913 A

Dear Mr. Garner:

I am writing in follow up to our recent telephone conference regarding the claim listed above. As you and I discussed, Westfield has repeatedly communicated its disclaimer, and we simply disagree concerning the application of *Kvaerner*, *Indalex*, et al. to the policy language and claim at issue. Therefore, Gavco has elected to terminate the tolling agreement.

I have attached a copy of a Complaint that I have filed on behalf of Gavco. I have also attached an Acceptance of Service. If you (or another representative of Westfield) are authorized to accept service, please execute and return the Acceptance. If I do not receive the Acceptance by Thursday, March 15, 2018, I will assume that Westfield will not accept service, and I will proceed accordingly.

Please do not hesitate to contact me with any questions or comments.

Yours truly,

Phil

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GAVCO MATERIALS, INC.,                          No.

                                        *Electronically Filed*

                Plaintiff,

        v.


WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

                Defendants.

# NOTICE OF REMOVAL EXHIBIT "2"

# PLEADINGS FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

01578076.DOCX 8896-0402

# Supreme Court of Pennsylvania
## Court of Common Pleas
### Civil Cover Sheet

_____ Fayette _____ County

**For Prothonotary Use Only:**

Docket No:

402 of 2018 GD

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

**Lead Plaintiff's Name:**
Gavco Materials, Inc.

**Lead Defendant's Name:**
Westfield Insurance Company, Inc.

**Are money damages requested?** [x] Yes [ ] No

**Dollar Amount Requested:** (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a _Class Action Suit?_** [ ] Yes [x] No

**Is this an _MDJ Appeal?_** [ ] Yes [x] No

**Name of Plaintiff/Appellant's Attorney:** Phillip R. Earnest

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your _PRIMARY CASE._ If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (does not include mass tort)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** (do not include Judgments)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- _____
- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- _____
- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [x] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

GAVCO MATERIALS, INC.,

CIVIL ACTION

                  Plaintiff,

No.: *402 of 2018 GD*

    v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

**COMPLAINT**

                Defendants.

Counsel for Plaintiff,
Gavco Materials, Inc.

Phillip R. Earnest
PA Id. 83208
pre@pietragallo.com
(412) 263-4374

Adam J. Tragone
PA Id. 322479
ajt@pietragallo.com
(412) 263-4354

**JURY TRIAL DEMANDED**

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC. | CIVIL ACTION |
| Plaintiff, | No.: |
| v. | |
| WESTFIELD INSURANCE COMPANY, INC., and BRAYMAN CONSTRUCTION CORPORATION | |
| Defendants. | |

## NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Pennsylvania Lawyer Referral Service
Pennsylvania Bar Association
100 South Street
P. O. Box 186
Harrisburg, PA 17108
Telephone: 1-800-692-7375

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC. | CIVIL ACTION |
| Plaintiff, | |
| v. | No.: |
| | |
| WESTFIELD INSURANCE COMPANY, INC., and BRAYMAN CONSTRUCTION CORPORATION | |
| Defendants. | |

## COMPLAINT

AND NOW, Plaintiff Gavco Materials, Inc., by and through its undersigned counsel, hereby files this Complaint:

1.    Plaintiff, Gavco Materials, Inc. ("Gavco"), is a Pennsylvania corporation with its corporate headquarters located at 850 N. Gallatin Ave. Ext., Uniontown, Fayette County, Pennsylvania 15401.

2.    Defendant, Westfield Insurance Company, Inc. ("Westfield"), is an Ohio corporation with a place of business located at One Park Circle, P.O Box 5001, Westfield Center, Medina County, Ohio 44251.   Westfield provides commercial and personal insurance in 21 states, including Pennsylvania.

3.    Defendant, Brayman Construction Corporation ("Brayman"), is a Pennsylvania corporation having a place of business at 1000 John Roebling Way, Saxonburg, Butler County, Pennsylvania 16056.

4.    This Court has jurisdiction over this matter pursuant to 42 Pa.C.S. § 931 because Westfield has regularly and continually conducted business in the Commonwealth of

Pennsylvania through the relevant time period at issue.   Additionally, Westfield issued the subject insurance policy to Gavco, which has headquarters in the Commonwealth.

5.      A justiciable controversy exists between Gavco and Westfield, and therefore, this Court may declare, to the extent necessary, the rights of the parties pursuant to an action for declaratory judgment under 42 Pa.C.S. §§ 7531 *et seq.*

6.      Venue is proper in this Court as a substantial portion of the events giving rise to this action took place in Fayette County.

7.      Brayman was the prime contractor on a Pennsylvania Department of Transportation ("PennDOT") project in Fayette County, Pennsylvania, involving the construction of the Masontown Bridge.  The Bridge carries Pennsylvania Route 21 over the Monongahela River (hereinafter the "Project").

8.      Gavco manufactures concrete for use in construction projects.

9.      Brayman placed orders for concrete for the Project from Gavco beginning in 2012, and Gavco made deliveries pursuant to these orders.

10.     On January 9, 2015, Brayman filed a Demand for Arbitration with the American Arbitration Association seeking damages result from Gavco's allegedly defective concrete.  (A copy of Brayman's Demand for Arbitration, without exhibits due to their voluminous nature, is attached as **Exhibit A**).

11.     Brayman alleges that the core samples used in the Project were analyzed by third party consultants for testing and their results indicated deficiencies and anomalies with Gavco's concrete. (**Exhibit A, ¶ 11**).

2

12.     Westfield issued a commercial general liability policy #CMM 1 097 129 to Gavco for the policy period July 30, 2013 to July 30, 2014 ("the Westfield Policy") (A copy of the Westfield Policy, with premium information redacted, is attached as **Exhibit B**).

13.     The Westfield Policy provides that Westfield "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (**Exhibit B,** CGL Coverage Form, CG 00 01 12 07, p. 1 of 16).

14.     The Westfield Policy provides limits of $1,000,000 per occurrence, with an aggregate limit for products liability in the amount of $2,000,000.   (**Exhibit B**, declaration pages).

15.     Under the terms of the Westfield Policy, Westfield has the "duty to defend the insured against any 'suit'" seeking "property damage."  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 1 of 16).

16.     The Westfield Policy, in relevant part, defines "property damage" as

    a.     "Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

(**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 15 of 16).

17.     The Westfield Policy provides product liability coverage for "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'.

. . ." with limited exceptions that do not apply in this case.  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 15 of 16).

18.     The Westfield Policy defines "your product" to include "any goods or products . . . "manufactured, sold, handled, distributed or disposed of by . . . You."  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 16 of 16).

19.     "Your product" also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product[.]"  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 16 of 16).

20.     The Westfield Policy defines "your work" to include "work or operations performed by you . . . and [m]aterials . . . furnished in connection with such work or operations."  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 16 of 16).

21.     "Your work" also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work[.]"  (**Exhibit B**, CGL Coverage Form, CG 00 01 12 07, p. 16 of 16).

22.     After Brayman filed its Demand for Arbitration, Gavco tendered a claim to Westfield for defense and indemnity under the Westfield Policy.

23.     Westfield has disclaimed coverage under the Westfield Policy for Brayman's demand for arbitration.

## COUNT ONE - BREACH OF CONTRACT

### Gavco Materials, Inc. v. Westfield Insurance Company, Inc.

24.     Gavco hereby incorporates by reference the preceding paragraphs of this pleading as though set forth fully at length herein.

25.     Westfield, by and through its employees, representatives and agents, communicated an offer to insure Gavco.

26.     By completing all requested applications for insurance and providing all requested documentation and information, and by paying the requested premiums, Gavco accepted Westfield's offer to insure Gavco.

27.     Gavco tendered a claim to Westfield for the defense and potential indemnity of Brayman's Demand for Arbitration.

28.     Gavco has performed any and all other duties that it owes pursuant to the Westfield Policy.

29.     Westfield has declined coverage to Gavco for Brayman's claims.

30.     By denying coverage, Westfield has failed to perform its contractual duty to honor Gavco's claim for benefits arising from Brayman's demand for arbitration.

31.     Westfield's breach of its contractual duty has caused Gavco to suffer damages in the cost of defending Brayman's arbitration action.

32.     Westfield's breach of its contractual duty continues to cause Gavco to suffer damages because of the ongoing cost of defending Brayman's arbitration action, and Gavco will suffer further damages in the form of a judgment against it which is must satisfy should Brayman prevail in the arbitration action.

WHEREFORE, Gavco Materials, Inc. demands that judgment be entered in its favor and against Defendant, Westfield Insurance Company, Inc. in an amount in excess of this jurisdiction's arbitration limits and any other relief that this Honorable Court deems to be appropriate.

## COUNT TWO - DECLARATORY JUDGMENT

### Gavco Materials, Inc. v. Westfield Insurance Company, Inc.

33.     Gavco hereby incorporates by reference the preceding paragraphs of this pleading as though set forth fully at length herein.

34.     Brayman's Demand for Arbitration triggers coverage under the Westfield Policy because Brayman alleges that Gavco supplied a defective product, which the Westfield Policy defines "an occurrence" and otherwise does not exclude from coverage.

35.     By declining coverage to Gavco, Westfield creates the need for Gavco to seek equitable relief in the form of a declaratory judgment that Westfield must honor its duty to defend Gavco, and to the extent that Brayman proves that Gavco caused Brayman to suffer any covered damages, that Westfield must indemnify Gavco.

WHEREFORE, Gavco Materials, Inc. prays this Court to enter a judgement in favor of Gavco and against Westfield Insurance Company, Inc. that Westfield owes Gavco a duty to defend Gavco with respect to the claims made against Gavco by Brayman in Brayman's Demand for Arbitration, and Westfield owes a duty to indemnify Gavco for any damages arising out of Gavco's delivery of a defective product.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:     *Phillip R. Earnest*
        _____
        Phillip R. Earnest
        Adam J. Tragone
        *Counsel for Plaintiff,*
        *Gavco Materials, Inc.*

6

# <u>EXHIBIT A</u>

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

## CONSTRUCTION INDUSTRY ARBITRATION RULES
### Demand for Arbitration

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Respondent<br>Gavco Materials, Inc. | | | Name of Representative (if known)<br>James R. Walker, Esq. | | |
|---|---|---|---|---|---|
| Address:<br>845 N. Gallatin Ave. Ext. | | | Name of Firm (if applicable)<br>Buchanan Ingersoll & Rooney P.C. | | |
| | | | Representative's Address:<br>One Oxford Centre, 301 Grant St., 20th Floor | | |
| City<br>Uniontown | State<br>PA | Zip Code<br>15401 | City<br>Pittsburgh | State<br>PA | Zip Code<br>15219 |
| Phone No.<br>724-437-4131 | | Fax No.<br>724-437-4136 | Phone No.<br>412-562-8800 | | Fax No.<br>412-562-1041 |
| Email Address: | | | Email Address:<br>james.walker@bipc.com | | |

The named claimant, a party to an arbitration agreement dated December 6, 2011 _____, which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration.

**ARBITRATION CLAUSE:** Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project. Contract Form: Customized Contract

**THE NATURE OF THE DISPUTE**
See Exhibit A attached hereto and incorporated herein.

| Dollar Amount of Claim  $3,000,000 plus on-going damages | Other Relief Sought: ☒ Attorneys Fees     ☒ Interest<br>☒ Arbitration Costs  ☐ Punitive/ Exemplary ☐ Other |
|---|---|

Amount Enclosed $7,000 _____  In accordance with Fee Schedule:  ☐ Flexible Fee Schedule  ☒ Standard Fee Schedule

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:**
Experience in and knowledge of the construction industry, and Pennsylvania Department of Transportation projects.

Hearing locale requested Butler, Pennsylvania **_____        Project site Masontown Borough, Fayette County, Pennsylvania

| Estimated time needed for hearings overall:<br><br>_____ hours or  7  days_____ | Specify type of business:  Claimant Bridge/Highway Contractor<br><br>Respondent Concrete Supplier |
|---|---|

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)        Date:<br>1/9/18 | Name of Representative<br>D. Matthew Jameson III, Esq. | | |
|---|---|---|---|
| Name of Claimant<br>Brayman Construction Corporation | Name of Firm (if applicable)<br>Babst, Calland, Clements & Zomnir, P.C. | | |
| Address (to be used in connection with this case)<br>1000 John Roebling Way | Representative's Address<br>Two Gateway Center, 603 Stanwix St. | | |
| City<br>Saxonburg | State<br>PA | Zip Code<br>16056 | City<br>Pittsburgh | State<br>PA | Zip Code<br>15222 |
| Phone No.<br>724-443-1633 | | Fax No.<br>724-443-8733 | Phone No.<br>412-394-5491 | | Fax No.<br>412-394-6576 |
| Email Address:<br>m_sanders@brayman.com | | | Email Address:<br>mjameson@babstcalland.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.
Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

**Although the Contract provides that an arbitration hearing must take place in Butler, Pennsylvania, Claimant would consent to the arbitration taking place in Pittsburgh, Pennsylvania.

AMERICAN ARBITRATION ASSOCIATION

BRAYMAN CONSTRUCTION           :
CORPORATION,                   :
                               :
            Claimant,          :
                               :    Case No.
      v.                       :
                               :
GAVCO MATERIALS, INC.,         :
                               :
            Respondent.        :

**EXHIBIT A TO**
**DEMAND FOR ARBITRATION**

Claimant, Brayman Construction Corporation ("Brayman"), by and through its undersigned counsel, files the following Demand for Arbitration against Respondent, Gavco Materials, Inc. ("Gavco"), and in support thereof states as follows:

1.      Brayman is a contractor that regularly engages in, among other things, heavy civil construction projects, including the construction or replacement of highway bridges.

2.      Brayman entered into a contract dated November 4, 2011 ("Prime Contract") with the Pennsylvania Department of Transportation ("PennDOT") for construction labor, materials and services related to the replacement of the Masontown Bridge at State Route 21, Section A10 located in Fayette County, Pennsylvania ("Project"). A copy of the main portion of the Prime Contract is attached hereto as **Exhibit 1.**

3.      Gavco is a material supplier regularly engaged in the business of manufacturing and delivering concrete materials for construction projects.

{B1901828.8}

4.     Brayman subcontracted with Gavco to furnish and deliver concrete and related materials for the Project pursuant to a written purchase order, No. 11-0005-18, dated December 5, 2011 ("Subcontract"). A copy of the Subcontract is attached hereto as **Exhibit 2.**

5.     The Subcontract incorporated the Prime Contract, including Project plans, specifications and other contract documents that relate to the materials that Gavco was required to furnish for the Project. Exhibit 2 at "Terms and Conditions, Paragraph 1."

6.     Pursuant to the Subcontract, Gavco was required to furnish and deliver materials that conform to the Project samples, drawings, specifications, plans and other descriptions provided by the Prime Contract and Subcontract documents. *Id.* at Paragraphs 1 and 5. Gavco also expressly warranted that all materials delivered would conform as required. *Id.* at Paragraph 5.

7.     Pursuant to the Subcontract, Gavco also expressly warranted that the materials delivered would be "merchantable; fit for [Brayman's] intended purpose; of good material, workmanship and design; and free from defect."

8.     Gavco also impliedly warranted that the materials it delivered were fit for the particular purpose intended by Brayman, and fit for the general purpose for which they were sold.

9.     Gavco breached the Subcontract and its warranties by delivering defective and nonconforming self-consolidating concrete ("SCC") to the Project, particularly with respect to SCC used for the drilled shafts of Piers 1, 3, 5 and 6 of the bridge structure.

10.    In accordance with standard practice, on-site quality control testing was performed on the delivered SCC at random times during each delivery cycle before placement, which included taking representative samples from the delivered SCC that were set aside for

{B1801828.3}                                          2

curing apart from the concrete that was actually placed by Brayman and incorporated into the Project in accordance with PennDOT's acceptance criteria. After the appropriate period for curing passed, the concrete cylinders from the representative samples evidenced deficiencies and quality control issues with the SCC delivered by Gavco, including but not limited to segregation of the material and delayed set of the material. Because these issues did not become evident until after the SCC was placed and the pre-placement samples had cured, Brayman did not have an opportunity to reject the SCC before placement.

11. Based on the issues indicated by the pre-placement samples, core samples were taken from the SCC that was placed and incorporated into the Project in accordance with the direction of PennDOT's acceptance criteria for the material. These core samples were sent to third party consultants for testing and investigation into the deficiencies and anomalies experienced with the SCC, and to determine if the SCC could be accepted despite the anomalies.

12. The defects with the SCC delivered by Gavco were caused solely or in substantial part by Gavco's poor quality control and failure to appropriately store, manufacture and/or mix the SCC, including admixtures.

13. Gavco's defective SCC negatively impacted the Project and caused Brayman damages by causing numerous issues, including but not limited to, the following:

    a. Complete failure of the placement of SCC for the drilled shafts of Columns 3 and 4 of Pier 1 of the bridge structure in February of 2014;

    b. The need to investigate, test and ultimately remove and replace the drilled shafts in Columns 3 and 4 of Pier 5 of the bridge structure, which were originally placed in October of 2013;

c. The need to investigate and test the drilled shaft in Column 3 of Pier 3 of the bridge structure due to delayed setting of SCC and related anomalies;

d. The need for testing for compressive strength verification and investigation of low compressive strength of the SCC placed for the drilled shafts in Column 4 of Pier 6 of the bridge structure;

e. Rejection of several trucks of SCC due to deficiencies or anomalies with the concrete that Gavco intended to deliver to the Project;

f. Due to the SCC problems with Pier 5, Brayman was forced to modify the original plan for Pier Cap Forming by dismantling the Pier Cap Form located at Pier 6 and rebuilding the Pier Cap Form at Pier 2 (located on the opposite side of the river from Piers 5 and 6), and then, after completion of Pier 2, re-mobilizing the Pier Cap Form on the opposite side of the river for use at Pier 5; and,

g. The need to store structural steel on-site due to the problems experienced with the SCC deliveries.

14. The problems encountered as a result of Gavco's delivery of defective SCC, as set forth above, also caused work stoppages and project delays amounting to at least 197 calendar days.

15. Gavco's breach of the Subcontract and express warranties by its delivery of nonconforming and defective SCC caused Brayman to incur additional costs and delay damages in relation to: (1) inspection, testing, and consultation services related to anomalies and defects in SCC; (2) additional material, labor and equipment costs related to the repair, replacement, remediation or rejection of defective SCC; (3) on-site storage of structural steel; (4) additional

equipment rental costs due to project delays; (5) additional field office costs and overhead due to project delays; (6) additional supervision costs due to project delays; (7) daily equipment stand-by costs for Brayman-owned equipment dedicated to the Project during periods of non-use due to project delays; (8) attorney fees and costs; and, (9) other damages caused by delivery of non-conforming, defective SCC by Gavco.

16.     The Project currently is not expected to be substantially complete until November of 2015. Brayman would have completed its work required by the Prime Contract in November of 2014 if not for the delay caused by Gavco's breach of contract and express warranties described above.

17.     Because Brayman planned on completing the Project by November of 2014, it did not include or account for costs attributable to winter weather for the 2014-2015 winter season in its bid price for the Project. Thus, the delay caused by Gavco's breach of contract and warranties will cause Brayman to incur substantial additional costs from working during the 2014-2015 winter season.

18.     The delay caused by Gavco's breaches also has caused additional delays due to the unavailability of equipment that had been scheduled for use, but became unavailable for before the work for which it was scheduled could be performed as a result of the Gavco-caused delays. These delays resulting from the unavailability of equipment also are on-going.

19.     Due to the on-going nature of the Project, the total amount of damages caused by Gavco's breach of the Subcontract and warranties cannot be accurately calculated because the total impact of the delays to the Project schedule cannot be ascertained at the present time.

20.     Indeed, at the conclusion of the Project, Brayman may be subjected to liquidated damages imposed by PennDOT as a result of the project delays caused by Gavco's breach of the

Subcontract and express warranties, for which Gavco is ultimately liable and obligated to indemnify Brayman.

21.    Brayman also will not have a complete accounting of additional costs due to working during the 2014-2015 winter season until Spring of 2015.

22.    Brayman's damages sustained to date as a result of Gavco's breach of the Subcontract and express warranties are in excess of $3,000,000, and Brayman respectfully requests an interim award in the amount of the damages Brayman has incurred to date.

23.    Once Brayman achieves substantial completion of the Project and PennDOT determines the amount (if any) of liquidated damages it will assess, Brayman respectfully requests a final award in its favor and against Gavco for an amount representative of all damages incurred as a result of Gavco's breach of the Subcontract and express warranties, plus attorneys' fees and costs recoverable under the Subcontract, arbitration costs, and interest, to the extent such damages were not awarded as part of the requested interim award.

<div style="margin-left: 40%;">

BABST, CALLAND, CLEMENTS
and ZOMNIR, P.C.

By: _____

D. Matthew Jameson III
Pa. I.D. No. 67764
James D. Miller
Pa. I.D. No. 209679
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
Telephone: (412) 394-5491
mjameson@babstcalland.com
jmiller@babstcalland.com
*Counsel to Claimant, Brayman
Construction Corporation*

</div>

# EXHIBIT B

**W E S T F I E L D**
**I N S U R A N C E**
Sharing Knowledge. Building Trust.™

RENEWAL
GENERAL LIABILITY DECLARATIONS

SR

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| NAMED INSURED AND MAILING ADDRESS | AGENCY  37-08735 | PROD. | 002 |

| | |
|---|---|
| GAVCO MATERIALS INC: <br> SEE SCHEDULE OF NAMED INSURED <br> PO BOX 967 <br> UNIONTOWN PA  15401 | IFFT AND PALMER ASSOCIATES <br> 625 STANWIX ST STE 2104 <br> PITTSBURGH PA 15222-1407 <br> TELEPHONE 412-471-0500 |

| Policy Number: CMM 1 097 129 |11| WIC Account Number: 3700456544 | M |
|---|---|---|---|

| Policy Period | From  07/30/13 <br> To  07/30/14 | at 12:01 A.M. Standard Time at your <br> mailing address shown above. |
|---|---|---|

LIMITS OF INSURANCE -

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products/Completed Operations) | | $2,000,000 |
| Products/Completed Operations Aggregate Limit | | $2,000,000 |
| Personal & Advertising Injury Limit (Per Person Or Organization) | | $1,000,000 |
| Each Occurrence Limit | | $1,000,000 |
| Damage to Premises Rented to You Limit | (Any One Premises) | $500,000 |
| Medical Expense Limit | (Any One Person) | $15,000 |

TOTAL ADVANCE ANNUAL GENERAL LIABILITY PREMIUM  ███████

Deductible Liability Insurance Applies

Forms And Endorsements Applicable To This Coverage Part:
CG0300A 0196*, CG2167  1204*, CG0001  1207*, IL0021  0908*, CG7000  1298*;
CG2503  0509*, CG2504A 0509*, CG2147  1207*, CG0068  0509*, CG2170  0108*;
CG2404A 0509*, CG2426  0704*, CG2186  1204*, CG2196  0305*, CG7017  1298*;
CG2033  0704*, CG2003  1185*, CG2005  1185*, CG2011  0196*, CG2012  0509*;
CG2015  0704*, CG2018  1185*, CG2024  1185*, CG2027  1185*, CG2029  1185*;
CG2034  0704*, CG7135  1112*.

PAGE  01 OF  03        CG 70 00 (12-98)        07/29/13        ORIGINAL



WESTFIELD INSURANCE
Sharing Knowledge. Building Trust.®

SR

RENEWAL
GENERAL LIABILITY DECLARATIONS
(Continued)

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 37-08735 | PROD. | 002 |
|---|---|---|---|---|

GAVCO MATERIALS INC;
SEE SCHEDULE OF NAMED INSURED
PO BOX 967
UNIONTOWN PA  15401

IFFT AND PALMER ASSOCIATES
625 STANWIX ST STE 2104
PITTSBURGH PA 15222-1407
TELEPHONE 412-471-0500

| Policy Number: CMM 1 097 129 | 11 | WIC Account Number: 3700456544 | M |
|---|---|---|---|

| Policy Period | From 07/30/13 To 07/30/14 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

Location Of All Premises Owned By, Rented To Or Controlled By The Named Insured
Are The Same As The Mailing Address Of The Policy Declarations Unless Otherwise
Indicated.

GENERAL LIABILITY SCHEDULE

PREMIUM BASIS LEGEND -
S = GROSS      PER $1,000      A = AREA  PER 1,000 SQ. FT.      U = UNITS PER UNIT
    SALES                      C = TOTAL COST  PER $1,000       T = SEE CLASSIFICATION
P = PAYROLL  PER $1,000        M = ADMISSIONS  PER 1,000            NOTES
O = OTHERS   PER $1,000

RATE LEGEND -
PREM/OP  =  PREMISES AND OPERATIONS
PROD     =  PRODUCTS AND COMPLETED OPERATIONS      MP = MINIMUM PREMIUM
CMPCBN   =  COMPOSITE PREMISES/PRODUCTS COMPLETED OPERATIONS

| CLASSIFICATION PENNSYLVANIA | CODE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|
| 1739 GRANGE ROAD CHARLEROI      PA  15022 DISTRIBUTORS - NO FOOD OR DRINK | 12362 | | PREM/OP PROD. | |
| CONCRETE - MIXED IN TRANSIT | 51956 | | PREM/OP PROD. | |
| 1608 MORRELL AVE CONNELLSVILLE      PA  15425 BUILDING MATERIAL DEALERS | 10255 | | PREM/OP | |
| 850 NORTH GALLATIN AVENUE UNIONTOWN      PA  15401 BUILDINGS OR PREMISES - OFFICE - PREMISES OCCUPIED BY EMPLOYEES OF THE INSURED - OTHER THAN NOT-FOR-PROFIT - INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS. PRODUCTS-COMPLETED OPERATIONS INCLUDED IN THIS CLASSIFICATION ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT. | 61224 | | PREM/OP | |

PREM/OP  MP  $129
PROD     MP  $133

OTHER ENDORSEMENTS -
COMMERCIAL GENERAL LIABILITY EXPANDED ENDORSEMENT

PAGE   03 OF  03          CC 70 00 (12 00)



WESTFIELD
INSURANCE
Sharing Knowledge. Building Trust.®

SR

**RENEWAL**
**GENERAL LIABILITY DECLARATIONS**
(Continued)

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| NAMED INSURED AND MAILING ADDRESS | AGENCY | 37-08735 | PROD. | 002 |

GAVCO MATERIALS INC;
SEE SCHEDULE OF NAMED INSURED
PO BOX 967
UNIONTOWN PA  15401

IFFT AND PALMER ASSOCIATES
625 STANWIX ST STE 2104
PITTSBURGH PA 15222-1407
TELEPHONE 412-471-0500

| Policy Number: CMM 1 097 129 | 11 | WIC Account Number: 3700456544 | M |
|---|---|---|---|

| Policy Period | From | 07/30/13 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|---|
| | To | 07/30/14 | |

TOTAL
TOTAL PREMIUM - PREMISES AND OPERATIONS
TOTAL PREMIUM - PRODUCTS AND COMPLETED OPERATIONS
TOTAL PREMIUM - BLANKET ADDL INSD OWNERS LESSEES OR CONTRACTORS
TOTAL PREMIUM - OTHER ENDORSEMENTS

TOTAL ADVANCE ANNUAL GENERAL LIABILITY PREMIUM

PAGE   03 OF  03          CG 70 00 (12 09)          07/00/17          PPC1HAL

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.  Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part de-

signed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

CG 00 01 12 07
Page 3 of 16

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.   Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.   Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)**  Less than 26 feet long; and

  **(b)**  Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)**  The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)**  the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the

definition of "mobile equipment."

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.   Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work;" or

(3) "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.  Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING IN-JURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication of ma-

terial whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

      "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   h. **Wrong Description Of Prices**

      "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

   i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

      "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

   j. **Insureds In Media And Internet Type Businesses**

      "Personal and advertising injury" committed by an insured whose business is:

      (1) Advertising, broadcasting, publishing or telecasting;

      (2) Designing or determining content of websites for others; or

      (3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.**, and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.** **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.** **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.** **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.** **Pollution - Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.** **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or de-

fending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.** **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1.** **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury:"

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or particpating in any physical exercises or games, sports or athletic contests.

**f. Products - Completed Operations Hazard**

Included within the "products-completed operations hazard."

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within

the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured – in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

    **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

    **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

    **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1) (a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1) (a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company

that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard;" and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard,"

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

b. **Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of in-

surance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above; or

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

**b.** While it is in or on an aircraft, watercraft or "auto;" or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises

you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products - completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

        (2) The providing of or failure to provide warnings or instructions.

POLICY NUMBER:   CMM 1097129                          COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Construction Projects:**

All Projects

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A and for all medical expenses caused by accidents under Section I - Coverage C, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1.  A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2.  The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

3.  Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project.  Such payments shall

not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4.  The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply.  However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B.  For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A and for all medical expenses caused by accidents under Section I - Coverage C, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1.  Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2.  Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

© Insurance Services Office, Inc., 2008

CG 25 03  05 09
**Page 1 of 2**

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section – III Limits of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

POLICY NUMBER:   CMM 1097129

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $   500 | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused): -

*If any other endorsement modifying the COMMERCIAL GENERAL LIABILITY COVERAGE PART contains a deductible clause, then this endorsement does not apply to any claim covered by that endorsement.*

A.  Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B.  You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1.  **PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

a.  Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

b.  Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c.  Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

(1)  "Bodily injury";

(2)  "Property damage"; or

(3)  "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96 A
Page 1 of 2

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury":

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence," claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2. **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph 2. **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" or which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

CG 21 67  12 04

POLICY NUMBER:   CMM 1097129

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Designated Location(s):**

All rented, owned and occupied locations other than construction projects.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A and for all medical expenses caused by accidents under Section I - Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A and for all medical expenses caused by accidents under Section I - Coverage C, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

© Insurance Services Office, Inc., 2008

CG 25 04 A  05 09
Page 1 of 2

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section III Limits of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

CG 21 47 12 07

COMMERCIAL GENERAL LIABILITY

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **q. Recording And Distribution Of Material Or Information In Violation Of Law**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

    **2. Exclusions**

    This insurance does not apply to:

    **p. Recording And Distribution Of Material Or Information In Violation Of Law**

    "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2008

CG 00 68 05 09

POLICY NUMBER: CMM 1097129

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name Of Person Or Organization:**

Any person or organization for whom you are required in a written contract or agreement to include a waiver of transfer of rights of recovery against others to us, provided the "bodily injury" or "property damage" occurs subsequent to the execution of the written agreement.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph 8. Transfer Of Rights Of Recovery Against Others To Us of Section IV - Conditions:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".  This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

CG 24 04A 05 09

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9.   "Insured contract" means:

   **a.**   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.**   A sidetrack agreement;

   **c.**   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.**   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.**   An elevator maintenance agreement;

   **f.**   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be im-

posed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)**   That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)**   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

**CG 24 26 07 04**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

CG 21 86  12 04

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph 2., Exclusions of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

CG 21 96  03 05

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. Supervisory, inspection, architectural or engineering activities.

2. "Bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

© ISO Properties, Inc., 2004

CG 20 33 07 04

POLICY NUMBER:  CMM 1097129

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# CONCESSIONAIRES TRADING UNDER YOUR NAME

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Concessionaire:**

**Automatic status when required by written contract, agreement or permit.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the concessionaire(s) shown in the Schedule but only with respect to their liability as a concessionaire trading under your name.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 03 11 85**

POLICY NUMBER: CMM 1097129

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**

**Automatic status when required by written contract, agreement or permit.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

   a. Their financial control of you; or

   b. Premises they own, maintain or control while you lease or occupy these premises.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 05 11 85**

POLICY NUMBER:  CMM 1097129                                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| | |
|---|---|
| 1. Designation of Premises (Part Leased to You): | **Automatic status when** |
| 2. Name of Person or Organization (Additional Insured): | **required by written contract,** |
| 3. Additional Premium: | **agreement or permit.** |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1994                                    **CG 20 11 01 96**

POLICY NUMBER:  CMM 1097129

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
## STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION
## OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| **Automatic status when required by written contract, agreement or permit.** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf, for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

2. This insurance does not apply to:

   a. "Bodily injury" "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

© Insurance Services Office Inc., 2008

CG 20 12 05 09

POLICY NUMBER:  CMM 1097129                               COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Automatic status when required by written contract, agreement or permit. | Your products related to your operations. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.**  Section II - Who Is An Insured is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**1.**  The insurance afforded the vendor does not apply to:

**a.**  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.**  Any express warranty unauthorized by you;

**c.**  Any physical or chemical change in the product made intentionally by the vendor;

**d.**  Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**e.**  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.**  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.**  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.**  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

**(1)**  The exceptions contained in Subparagraphs d. or f.; or

**(2)**  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.**  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

© ISO Properties, Inc., 2004

**CG 20 15**  07 04

POLICY NUMBER:   CMM 1097129

COMMERCIAL GENERAL LIABILITY

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED -
## MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**

Automatic status when required by written contract, agreement or permit.

**Designation of Premises:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 18 11 85**

POLICY NUMBER:   CMM 1097129

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# OWNERS OR OTHER INTERESTS
# FROM WHOM LAND HAS BEEN LEASED

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Designation of Premises (Part Leased to You):**

**Automatic status when required by written contract, agreement or permit.**

**Name of Person or Organization:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to lease that land;

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1984

CG 20 24 11 85

POLICY NUMBER:   CMM 1097129

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# CO-OWNER OF INSURED PREMISES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**

**Automatic status when required by written contract, agreement or permit.**

**Location of Premises:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as co-owner of the premises shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 27 11 85**

POLICY NUMBER: CMM 1097129

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**

**Automatic status when required by written contract, agreement or permit.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 29 11 85**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

CG 21 70 01 08

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items 1 thru 4.  Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

CG 70 17 12 98

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT - AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **Who Is An Insured (Section II)** is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, oper-
ation or use of equipment leased to you by such person or organization.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

B.  With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

© ISO Properties, Inc., 2004

**CG 20 34 07 04**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY EXPANDED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SCHEDULE

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only.  For the details affecting each coverage, please refer to the terms and conditions in this endorsement.

A. **Expected or Intended Injury**
  - Reasonable force
B. **Non-owned Watercraft**
  - Increased to 60 feet
C. **Non-owned Aircraft**
D. **Property Damage - Elevators**
E. **Damage To Premises Rented To You**
  - Limit increased to $500,000
F. **Personal and Advertising Injury**
  - Exclusions
G. **Medical Payments - Volunteer Workers**
H. **Voluntary Property Damage**
I. **Care, Custody and Control**
J. **Supplementary Payments**
  - Bail Bonds - $2500
  - Loss of Earnings - $1000
K. **Who Is An Insured broadened:**
  - Limited Liability Partnership
  - Joint Ventures / Partnership / Limited Liability Company
  - Health Care Professionals (Incidental Medical Malpractice)
  - Newly Formed or Acquired Entities (up to 365 days)
  - Individual Owners of Buildings
L. **Knowledge and Notice Of Occurrence**
M. **Unintentional Failure To Disclose Hazards**
N. **Liberalization**
O. **Definitions**
  - Bodily Injury redefined
  - Expanded Personal and Advertising Injury definition
  - Unintentional Damage or Destruction added

In addition to the policy amendments contained in A through O listed above, the endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:
  - Additional Insured - Co-Owners of Insured Premises - CG 20 27
  - Additional Insured - Concessionaire - CG 20 03
  - Additional Insured - Controlling Interest - CG 20 05
  - Additional Insured - Grantor of Franchise - CG 20 29
  - Additional Insured - Lessor of Leased Equipment - CG 20 34
  - Additional Insured - Managers or Lessors of Premises - CG 20 11
  - Additional Insured - Mortgagee, Assignee or Receiver - CG 20 18
  - Additional Insured - Owners or Other Interests From Whom Land Has Been Leased - CG 20 24
  - Additional Insured - State or Governmental Agency or Subdivision or Political Subdivision - Permits or Authorizations - CG 20 12
  - Additional Insured - Vendors - CG 20 15
  - Waiver of Transfer of Rights of Recovery - CG 24 04

### A.  EXPECTED OR INTENDED INJURY

Under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2, Exclusions a.** is replaced with the following:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.

### B.  NON-OWNED WATERCRAFT

Under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2. Exclusions g. (2) (a)** is replaced with the following:

**(a)**  Less than 60 feet long; and

### C.  NON-OWNED AIRCRAFT

Under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2. Exclusions, g. Aircraft, Auto or Watercraft,** the following is added:

**(6)**  An aircraft you do not own, provided that:

**(a)**  The pilot in command holds a currently effective certificate issued by the duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**(b)**  It is rented with a trained, paid crew; and

**(c)**  It does not transport persons or cargo for a charge.

### D.  PROPERTY DAMAGE - ELEVATORS

With respect to Exclusions of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2, Exclusions, paragraphs (3), (4) and (6)** of Exclusion **j. Damage to Property** and Exclusion **k. Damage To Your Product** do not apply to the use of elevators.  The insurance afforded by this provision is excess over any valid and collectible property insurance (including any deductible) available to the insured, and the Other Insurance Condition is changed accordingly.

### E.  DAMAGE TO PREMISES RENTED TO YOU

Under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2. Exclusions,** the last paragraph of item **2. Exclusions** is replaced with the following:

Exclusions **c.** through **n.** do not apply to damage by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in **Section III - LIMITS OF INSURANCE.**

### F.  PERSONAL AND ADVERTISING INJURY

Under **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** the following are added to Item **2. Exclusions:**

**q.  Discrimination Relating To Room, Dwelling or Premises**

Caused by discrimination directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured.

**r.  Fines or Penalties**

Fines or penalties levied or imposed by a governmental entity because of discrimination.

### G.  MEDICAL PAYMENTS - VOLUNTEER WORKERS

Under **SECTION I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, Item 2. Exclusions b. Hired Person** is replaced with the following:

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or tenant of any insured; however this exclusion does not apply to "volunteer workers" while engaged in maintenance or repair of your premises.

Under **SECTION I - COVERAGES,** the following are added:

### H.  VOLUNTARY PROPERTY DAMAGE

**1.  Insuring Agreement**

We will pay, at your request, for "property damage" to property of others caused by you, or while in your possession arising out of your business operations.

**2.  Exclusions**

Coverage for Voluntary Property Damage does not apply to:

**a.**  "Loss" of property at premises owned, rented, leased, operated or used by you.

**b.**  "Loss" of property while in transit;

**c.**  "Loss" of property owned by, rented to, leased to, borrowed by or used by you;

**d.** The cost of repairing or replacing:

    **(1)** "Your work" defectively or in-correctly done by you;

    **(2)** "Your product" manufactured, sold or supplied by you; or

unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

**e.** "Loss" of property caused by or arising out of the "products-completed operations hazard."

**3.  Deductible**

We will not pay for "loss" in any one "occurrence" until the amount of "loss" exceeds $250.  We will then pay the amount of "loss" in excess of $250, up to the applicable limit of insurance.

**4.  Actual Cost**

In the event of covered "loss", you shall, if requested by us, replace the damaged property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

The most we will pay under Voluntary Property Damage for "loss" arising out of any one "occurrence" is $250.  The most we will pay for the sum of all "losses" under this coverage is $1,000.

**I.  CARE, CUSTODY OR CONTROL**

**1.  Insuring Agreement**

We will pay those sums the insured becomes legally obligated to pay as damages because of "property damage" to property of others while in your care, custody or control or property as to which you are exercising physical control if the "property damage" arises out of your business operations.

**2.  Exclusions**

Coverage for Care, Custody or Control does not apply to:

**a.** "Property damage" to property at any premises owned, rented, leased, operated or used by you;

**b.** "Property damage" to property while in transit;

**c.** The cost of repairing or replacing:

    **(1)** "Your work" defectively or in-correctly done by you; or

    **(2)** "Your product" manufactured, sold or supplied by you;

unless the "property damage" is caused directly by you after delivery of "your product" or completion of "your work" and resulting from a subsequent undertaking.

**d.** "Property damage" to property caused by or arising out of the "products-completed operations hazard".

**3.  Deductible**

We will not pay for "property damage" in any one "occurrence" until the amount of "property damage" exceeds $250. We will then pay the amount of "property damage" in excess of $250, up to the applicable limit of insurance.

**4.  Actual Cost**

In the event of covered "property damage", you shall, if requested by us, replace the property or furnish the labor and materials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

The most we will pay under Care, Custody or Control for "property damage" is $1,000 for each "occurrence".  The most we will pay for the sum of all damages because of "property damage" under this coverage is $5,000.

**J.  SUPPLEMENTARY PAYMENTS**

Under **SECTION I - SUPPLEMENTARY PAYMENTS COVERAGES A AND B**, item **1.b.** is replaced with the following:

**b.** Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the "Bodily Injury" Liability Coverage applies. We do not have to furnish these bonds.

Under **SECTION I - SUPPLEMENTARY PAYMENTS COVERAGES A AND B**, item **1.d.** is replaced with the following:

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $1,000 a day because of time off from work.

**K.  WHO IS AN INSURED BROADENED**

Under **SECTION II - WHO IS AN INSURED** item **1.b.** is replaced with the following:

**b.** A partnership (including a limited liability partnership) or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

Under **SECTION II - WHO IS AN INSURED** the following is added to item 1:

**f.   Joint Ventures / Partnership / Limited Liability Company Coverage**

You are an insured when you had an interest in a joint venture, partnership or limited liability company which is terminated or ended prior to or during this policy period but only to the extent of your interest in such joint venture, partnership or limited liability company. This coverage does not apply:

**(1)** Prior to the termination date of any joint venture, partnership or limited liability company; or

**(2)** If there is other valid and collectible insurance purchased specifically to insure the partnership, joint venture or legal liability company.

Under **SECTION II - WHO IS AN INSURED**, item 2.a. is replaced with the following:

**a.** Your "employees" or volunteer workers, other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or volunteer workers are an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are limited liability company), or to a co-"employee" or co-volunteer worker while that is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or co-volunteer worker as a consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

This does not apply to nurses, emergency medical technicians or paramedics employed by you to provide health care services, but only if you are not in the business or occupation of providing such professional services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees" or volunteer workers, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Under **SECTION II - WHO IS AN INSURED**, item 3.a. is replaced with the following:

**a.** Coverage under this provision is afforded only until the end of the policy period or the next anniversary of this policy's effective date after you acquire or form the organization, whichever is earlier.

Under **SECTION II - WHO IS AN INSURED**, the following is added:

**4.** For **COVERAGE A** and **COVERAGE B** only, the owner of any building leased to you, but only if the building owner is a shareholder in your corporation or a partner in your partnership insured in this policy, and only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you. However, this insurance does not apply:

**a.** To any "occurrence" or offense which takes place after you cease to be a tenant in the premises; or

**b.** To structural alterations, new construction or demolition operations performed by or on behalf of the building owner.

Under **SECTION II - WHO IS AN INSURED** the last paragraph of this section is replaced with the following:

Except as provided in 3. above, no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

L. **KNOWLEDGE AND NOTICE OF OCCURRENCE**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In the Event of Occurrence, Offense, Claim Or Suit,** the following is added:

e. The requirement in Condition **2.a.** applies only when the "occurrence" or offense is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership;

(3) An "executive officer" or insurance manager, if you are a corporation; or

(4) A manager, if you are a limited liability company.

f. The requirement in Condition **2. b.** will not be breached unless the breach occurs after such claim or "suit" is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership;

(3) An "executive officer" or insurance manager, if you are a corporation; or

(4) A manager, if you are a limited liability company.

g. Your rights under this Coverage Part will not be prejudiced if you fail to give us notice of an "occurrence," offense, claim, or "suit" and that failure is solely due to your reasonable belief that the "bodily injury" or "property damage" is not covered under this Coverage Part. However, you shall give written notice of this "occurrence," offense, claim, or "suit" to us as soon as you are aware this insurance may apply to such "occurrence", offense, claim, or "suit".

M. **UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 6. Representations,** the following is added:

d. Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional.

N. **LIBERALIZATION**

**Under SECTION I - COVERAGES, SECTION II - WHO IS AN INSURED, SECTION III - LIMITS OF INSURANCE, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS AND SECTION V - DEFINITIONS,** the following is added:

**Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this endorsement.

O. **DEFINITIONS**

Under **SECTION V - DEFINITIONS,** item **3.** is deleted and replaced with the following:

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

Under **SECTION V - DEFINITIONS,** item **14.** the following is added to the definition of "Personal and advertising injury":

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person but only if such discrimination or humiliation is:

(1) not done intentionally by or at the direction of:

(a) The insured; or

(b) Any "executive officer," director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and

(2) Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or persons by any insured.

Under **SECTION V - DEFINITIONS,** the following definition is added:

23. "Loss" means unintentional damage or destruction but does not include disappearance, theft, or loss of use.

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

GAVCO MATERIALS, INC.

        Plaintiff,

    v.


WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION

        Defendants.

CIVIL ACTION

No.:

## VERIFICATION

I hereby swear and affirm that I am a duly authorized representative of Plaintiff, Gavco Materials, Inc., and that the factual allegations made in the foregoing Complaint are true and correct based on my knowledge, information, and belief.  I understand that any false statements herein are made subject to penalty of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Date: 2/23/2018

Signature: _Shelly Snoddy_

Name: Shelly M. Snoopy

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:    *Phillip R. Earnest*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Phillip R. Earnest
PA Id.: 83208
*Counsel for Plaintiff,*
*Gavco Materials, Inc.*

February 26, 2018

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

GAVCO MATERIALS, INC.,

          Plaintiff,

     v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

        Defendants.

CIVIL ACTION

No.:  402 of 2018 GD

**ACCEPTANCE OF SERVICE OF
COMPLAINT BY BRAYMAN
CONSTRUCTION CORPORATION**

Counsel for Plaintiff,
Gavco Materials, Inc.

Phillip R. Earnest
PA Id. 83208
pre@pietragallo.com
(412) 263-4374

Adam J. Tragone
PA Id. 322479
ajt@pietragallo.com
(412) 263-4354

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219

**JURY TRIAL DEMANDED**

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC. | CIVIL ACTION |
| Plaintiff, | No.: |
| v. | |
| | |
| WESTFIELD INSURANCE COMPANY, INC., and BRAYMAN CONSTRUCTION CORPORATION | |
| Defendants. | |

## ACCEPTANCE OF SERVICE OF COMPLAINT
## BY BRAYMAN CONSTRUCTION CORPORATION

I, James D. Miller, Esq., hereby accept service of the Complaint in the above-captioned

matter on behalf of Brayman Construction Corporation, and state herein that I am authorized to

do so.

Date: 3/2/2018

Signature: _____

Printed Name: James D. Miller, Esq.
Pa. ID No. 209679

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC. | CIVIL ACTION |
| Plaintiff, | No.: 402 of 2018 GD |
| v. | |
| | |
| WESTFIELD INSURANCE COMPANY, INC., and BRAYMAN CONSTRUCTION CORPORATION | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2018, a true and correct copy of the within Acceptance of Service of Complaint was filed and served on counsel and parties of record by first-class U. S. Mail, postage prepaid, addressed as follows:

Steve Garner, CPCU
Complex Claims Specialist
Westfield Insurance
P. O. Box 3010
Lancaster, PA  17604

Westfield Insurance Company
One Park Circle
P. O. Box 5001
Westfield Center, OH  44251

James D. Miller, Esquire
Babst Calland
Two Gateway Center
Pittsburgh, PA  15222

*Phillip R. Earnest*
_____
Phillip R. Earnest

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

GAVCO MATERIALS, INC.,

                  Plaintiff,

      v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

             Defendants.

CIVIL DIVISION

No.: 402 of 2018 GD

**PRAECIPE FOR APPEARANCE**

Filed on behalf of:
DEFENDANT,
WESTFIELD INSURANCE
COMPANY, INC.

Counsel of Record for this party:
**JEFFREY A. RAMALEY, ESQUIRE**
Pa. I.D. #41559

**ZIMMER KUNZ, PLLC**
Firm #920
The Grant Building
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
(412) 281-8000

**JURY TRIAL DEMANDED**

01573723.DOC 8896-0402

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

GAVCO MATERIALS, INC.,                    CIVIL DIVISION

            Plaintiff,                    No.: 402 of 2018 GD

    v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

            Defendants.

## PRAECIPE FOR APPEARANCE

TO:  PROTHONOTARY

        Please enter our firm's appearance on behalf of the Defendant, WESTFIELD

INSURANCE COMPANY, INC., in the above-captioned matter.

                        ZIMMER KUNZ, PLLC

                        _____
                        JEFFREY A. RAMALEY, ESQUIRE
                        Pa. I.D. #41559
                        Counsel for Defendant,
                        WESTFIELD INSURANCE
                        COMPANY, INC.

01573723.DOC 8896-0102

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

GAVCO MATERIALS, INC.,                    CIVIL DIVISION

        Plaintiff,                        No.: 402 of 2018 GD

        v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

        Defendants.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the within PRAECIPE FOR

APPEARANCE was forwarded to counsel below named by United States Mail on the 19th day of

March, 2018.

Phillip R. Earnest, Esquire              James D. Miller, Esquire
Pietragallo Gordon Alfano                Babst Calland
Bosick & Raspanti, LLP                   Two Gateway Center
One Oxford Centre, 38th Floor            Pittsburgh, PA 15222
Pittsburgh, PA 15219                     (Attorney for Defendant, Brayman
(Attorney for Plaintiff)                 Construction Company)


                                ZIMMER KUNZ, PLLC


                                JEFFREY A. RAMALEY, ESQUIRE
                                Pa. I.D. #41559
                                Counsel for Defendant,
                                WESTFIELD INSURANCE
                                COMPANY, INC.

01573723.DOC 8896-0402

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies With the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Jeffrey A. Ramaley, Esquire</u>

Signature: _____

Name:    <u>Jeffrey A. Ramaley, Esquire</u>

Attorney No.: (if applicable): <u>41559</u>

01573723.DOC 8896-0402



2018 MAR 29  AM 10: 42

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

GAVCO MATERIALS, INC.,

              Plaintiff,

      v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

           Defendants.

CIVIL ACTION

No.: 402 of 2018 GD

**ACCEPTANCE OF SERVICE OF
COMPLAINT BY WESTFIELD
INSURANCE COMPANY, INC.**

Filed on behalf of Plaintiff,
Gavco Materials, Inc.

Counsel of record for this party:

Phillip R. Earnest
PA Id. 83208
pre@pietragallo.com
(412) 263-4374

Adam J. Tragone
PA Id. 322479
ajt@pietragallo.com
(412) 263-4354

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219

**JURY TRIAL DEMANDED**

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC. | CIVIL ACTION |
| Plaintiff, | No.: 402 of 2018 GD |
| v. | |
| WESTFIELD INSURANCE COMPANY, INC., and BRAYMAN CONSTRUCTION CORPORATION | |
| Defendants. | |

## ACCEPTANCE OF SERVICE OF COMPLAINT BY WESTFIELD INSURANCE COMPANY, INC.

I hereby certify on behalf of Defendant, Westfield Insurance Company, Inc., I am authorized to and do hereby accept service of the Complaint filed by Plaintiff , Gavco Materials, Inc..

Date: 3-27-18

Signature: _____

Printed Name: JEFFREY A. RAMALEY

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

GAVCO MATERIALS, INC.

               Plaintiff,

      v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION

          Defendants.

CIVIL ACTION

No.: 402 of 2018 GD

## CERTIFICATE OF SERVICE

I hereby certify I served a copy of the foregoing Acceptance of Service on March 27,

2018 by first-class U. S. Mail, postage prepaid, upon the following counsel of record:

Jeffrey A. Ramaley, Esquire
Zimmer Kunz, PLLC
310 Grant Street, Suite 3000
Pittsburgh, PA 15219
*Counsel for Defendant,*
*Westfield Insurance Company*

James D. Miller, Esquire
Babst Calland
Two Gateway Center
Pittsburgh, PA 15222
*Counsel for Defendant,*
*Brayman Construction Corporation*

*Phillip R. Earnest*
_____
Phillip R. Earnest

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GAVCO MATERIALS, INC.,                          No.

                                                *Electronically Filed*

                        Plaintiff,

                v.


WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

                Defendants.

# NOTICE OF REMOVAL EXHIBIT "3"

# NOTICE OF FILING OF REMOVAL

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

| | |
|---|---|
| GAVCO MATERIALS, INC., | CIVIL DIVISION |
| | |
| | No.: 402 of 2018 GD |
| Plaintiff, | |
| | |
| v. | **NOTICE OF FILING OF REMOVAL** |
| | |
| | |
| WESTFIELD INSURANCE COMPANY, | Filed on behalf of: |
| INC., and BRAYMAN CONSTRUCTION | DEFENDANT, |
| CORPORATION, | WESTFIELD INSURANCE |
| | COMPANY, INC. |
| Defendants. | |

Counsel of Record for this party:
**JEFFREY A. RAMALEY, ESQUIRE**
Pa. I.D. #41559
**DARA A. DECOURCY, ESQUIRE**
Pa. I.D. #30220
**AARON H. WEISS, ESQUIRE**
Pa. I.D. #320980

**ZIMMER KUNZ, PLLC**
Firm #920
The Grant Building
310 Grant Street, Suite 3000
Pittsburgh, PA  15219
(412)  281-8000

**JURY TRIAL DEMANDED**

01578075.DOCX 8896-0402

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

GAVCO MATERIALS, INC.,                          CIVIL DIVISION

                    Plaintiff,                  No.: 402 of 2018 GD

            v.


WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

                    Defendants.

## NOTICE OF FILING OF REMOVAL

TO: PROTHONOTARY

            **PLEASE TAKE NOTICE** that Defendant, WESTFIELD INSURANCE

COMPANY, INC, by and through its counsel and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

has removed this action to the United States District Court for the Western District of Pennsylvania,

Pittsburgh Division on April __, 2018. A Notice of Removal was filed with the Clerk of the United

States District Court for the Western District of Pennsylvania. Thereafter, the United States District

Court, Western District of Pennsylvania assigned it to the Pittsburgh Division at Docket No. _____.

In accordance with 28 U.S.C. § 1446(d), no further proceedings shall be held in the Court of

Common Pleas of Fayette County, Pennsylvania unless and until this action is remanded.

                              ZIMMER KUNZ, PLLC


                              _____
                              JEFFREY A. RAMALEY, ESQUIRE
                              DARA A. DECOURCY, ESQUIRE
                              AARON H. WEISS, ESQUIRE
                              Counsel for Defendant,
                              WESTFIELD INS. CO. INC.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies With the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Jeffrey A. Ramaley, Esq.; Dara A. DeCourcy, Esq.; Aaron H. Weiss, Esq.</u>

Signature: _____

Name:      <u>Jeffrey A. Ramaley, Esq.; Dara A. DeCourcy, Esq.; Aaron H. Weiss, Esq.</u>

Attorney No.: (if applicable): <u>41559; 30220; 320980</u>

01578075.DOCX 8896-0402

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

GAVCO MATERIALS, INC.,                          CIVIL DIVISION

                        Plaintiff,              No.: 402 of 2018 GD

        v.

WESTFIELD INSURANCE COMPANY,
INC., and BRAYMAN CONSTRUCTION
CORPORATION,

                        Defendants.

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the within NOTICE OF FILING

OF REMOVAL was forwarded to counsel below named by United States Mail on the ___ day of

April, 2018.

Phillip R. Earnest, Esquire           James D. Miller, Esquire
Pietragallo Gordon Alfano             Babst Calland
Bosick & Raspanti, LLP                Two Gateway Center
One Oxford Centre, 38th Floor         Pittsburgh, PA 15222
Pittsburgh, PA 15219                  (Attorney for Defendant, Brayman
(Attorney for Plaintiff)              Construction Company)


                        ZIMMER KUNZ, PLLC


                        _____
                        JEFFREY A. RAMALEY, ESQUIRE
                        DARA A. DECOURCY, ESQUIRE
                        AARON H. WEISS, ESQUIRE
                        Counsel for Defendant,
                        WESTFIELD INS. CO. INC.

01578075.DOCX 8896-0402