IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

BRAYMAN CONSTRUCTION )
CORPORATION, assignee of GAVCO )
MATERIALS, INC., ) 2:18-CV-00457-MJH
)
Plaintiff, )
)
vs. )
)
WESTFIELD INSURANCE COMPANY, )
INC, )
)
Defendant,

OPINION AND ORDER

Plaintiff, Brayman Construction Corporation ("Brayman"), assignee of Gavco Materials, Inc. ("Gavco"), brings claims for breach of contract and statutory bad faith (42 Pa.C.S. § 8731) arising out of Defendant, Westfield Insurance Company, Inc.'s ("Westfield"), denial of defense and indemnification coverage under the insurance policy between Gacvo and Westfield. Westfield has filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 31). After careful consideration of Brayman's First Amended Complaint (ECF No. 30), Westfield's Motion to Dismiss for Failure to State a Claim and Brief in Support (ECF Nos. 31 and 32), Brayman's Response in Opposition and Reply Brief (ECF No. 36), Westfield's Reply Brief (ECF No. 37), and Brayman's Sur-Reply Brief (ECF No. 42), the arguments of counsel, supplemental letters filed by Brayman and Westfield (ECF Nos. 46 and 47), and for the following reasons, the Motion to Dismiss is Denied.

I. **Background**

Brayman was a prime contractor for a bridge construction project ("the project"). (ECF No. 30-1 at ¶ 2). Gavco was subcontracted by Brayman to deliver concrete for use in the project.

*Id.* at ¶ 4. Pursuant to the subcontract, Gavco was required to furnish and deliver materials that conformed to certain plans and specifications. *Id.* at ¶¶ 5-6. After the concrete was delivered, tested, and used in the bridge components, it failed, and bridge columns for the pier had to be replaced at Brayman's expense. *Id.* at ¶ 10.

Brayman pursued recovery from Gavco in Arbitration. (ECF No. 30 at ¶ 12). Gavco requested Westfield to provide defense and liability indemnity pursuant to the insurance contract between Gavco and Westfield. *Id.* at ¶ 38. Westfield denied coverage for both defense costs and liability. *Id.* at ¶ 43. After lengthy proceedings, Gavco settled the matter with Brayman for $2,400,000 plus an assignment of rights to pursue an action against Westfield. *Id.* at ¶ 61-64 Gacvo incurred $529,041.26 to defend the arbitration case and assigned its right to pursue said expenses to Brayman. *Id.* at ¶ 52. Presently, Brayman has sued Westfield for breach of contract to recover Gavco's claims for defense costs and liability to Brayman, and for Westfield's bad faith under 42 Pa.C.S. § 8371 in denying defense and indemnity coverage.

In its initial demand for arbitration ("original demand"), Brayman alleged that Gavco breached its subcontract when it manufactured and sold defective and nonconforming concrete. (ECF No. 30-1 at ¶ 9). Further, Brayman alleged that Gavco's defective concrete caused a failure of the placement of concrete for the drilled shafts of the bridge pier. *Id.* at ¶ 13. After discovery in the arbitration matter, Brayman filed an amended demand to conform to the evidence. (ECF No. 30-7). The amended demand alleged that Gavco negligently designed and manufactured the concrete and delivered the same to the project. *Id.* at ¶ 9. Further, the amended demand alleged the defects were caused soley by a lack of appropriate quality control measures and that the failure and malfunction was unexpected by all parties involved. *Id.* at ¶¶ 12-13. Brayman alleges in its Amended Complaint that its original and amended arbitration

2

demand included claims for breach of contract, breach of warranty, negligence and strict products liability for damages caused by the active malfunction of Gavco's concrete. (ECF No. 30 at ¶ 22).

Turning to the insurance contract in dispute in this case, the Westfield Policy issued to Gavco provides it "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies." *Id.* at p. 10. Under the terms of the Policy, Westfield has the "duty to defend the insured against any 'suit'" seeking "property damage." *Id.* The Policy, in relevant part, defines "property damage" as

> a. "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

*Id.* at p. 24. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

In its Motion to Dismiss, Westfield argues that the Breach of Contract claim (Count I) fails, because the damages raised in both the original and amended demands do not constitute an "occurrence" under its insurance contract with Gavco, or in the alternative, the insurance contract exclusions defeat coverage. Further, Westfield argues that the Bad Faith claim (Count II) fails because it had a reasonable basis to deny coverage under the insurance contract.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not

whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

### III. Discussion

#### A. Breach of Contract Claim

##### 1. Insurance Contracts Generally

"Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract govern its interpretation." *Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 540 (2010) (citations omitted). "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P. C.*, 635 Pa. 427, 137 A.3d 1247, 1258 (2016) (citations omitted). "The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Minnesota Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 344, 855 A.2d 854 (2004) (internal citations and quotation marks omitted).

##### 2. Duty to Defend and Indemnify

In Pennsylvania, an insurer's duty to defend is determined by comparing the allegations in the complaint with the relevant policy of insurance. *Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 (2006). "[A]n insurance company is obligated to defend an insured whenever the complaint filed by the injured party may <u>potentially</u> come within the policy's coverage." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (emphasis in

5

original). The duty to defend is distinct from the duty to indemnify, but is broader; thus, if there is no duty to defend, there is no duty to indemnify. *Kvaerner*, 908 A.2d at 896 n.7. In Pennsylvania, courts follow the "four corners rule," considering only the allegations in the complaint in the underlying action[1]. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 679 (3d Cir. 2016). In determining whether an underlying complaint triggers a duty to defend, courts focus on the complaint's factual allegations, not the terminology used to label the causes of action. *State Farm Fire & Cas. v. Brighton Exteriors, Inc.*, No. 14-03987, 2015 WL 894419, at *4 (E.D. Pa. Mar. 3, 2015). "[T]he duty to indemnify is a 'conditional obligation' dependent on a determination at trial as to whether the loss suffered is covered by the terms of the policy." *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 434 (Pa.Super. Ct. 2002).

### a. Occurrence under Westfield Policy

Westfield argues that it did not breach its contract to its insured by refusing to defend and indemnify Gavco because both Brayman's original and amended demand did not plead an "occurrence" as defined under the Westfield Policy. The Westfield Policy, issued to Gavco, provides it "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies." *Id.* at p. 10. Under the terms of the Policy, Westfield has the "duty to defend the insured against any 'suit'" seeking "property damage." *Id.* Therefore, both the duty to defend and indemnify are dependent on whether there has been "property damage" as defined in the policy. The Policy, in relevant part, defines "property damage" as

> a. "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[1] In this case, the underlying action was an Arbitration Demand rather than a Complaint.

6

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

*Id.* at p. 24. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* "Accident" is not defined in the policy, but generally Pennsylvania Courts have held, "[w]ords of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." *Kvaerner* 908 A.2d at 897–98. Thus, the court "may consult the dictionary definition of a word to determine its ordinary usage." *Id.* In looking to the dictionary definition, *Kvaerner* defined "'accident' as '[a]n unexpected and undesirable event,' or 'something that occurs unexpectedly or unintentionally.' *Id.* *Kvaerner* further noted that "[t]he key term in the ordinary definition of 'accident' is 'unexpected.'" *Id.* Thus, the Pennsylvania Supreme Court held that "[t]his implies a degree of fortuity that is not present in a claim for faulty workmanship." *Id.*

Examining what constitutes an "accident," the Supreme Court of Pennsylvania held that "the definition of 'accident' required to establish an 'occurrence' under the policies cannot be satisfied by claims based upon faulty workmanship." *Id.* at 899 (footnote omitted). The Court reasoned that "[s]uch claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." *Id.* As such, the Court concluded that the insurer did not have a duty to defend Kvaerner because the underlying allegations concerned property damage resulting from defective workmanship to the work product itself. *Id.*

Westfield argues that the circumstances of supplying a defective product are akin the holding in *Kvaerner*, because it does not flow from a fortuitous or unexpected event but rather from an expected outcome, where Gavco failed to meet its contractual duties to provide a conforming product. Plaintiff contends that *Kvaerner* is not controlling, because the underlying

7

allegations include claims related to a defective product that caused damage to property other than the product itself. Plaintiff argues that the holding in *Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418 (Pa. Super. Ct. 2013) triggers coverage in this case.[2]

In *Indalex*, homeowners brought claims of strict liability, negligence, breach of warranty, and breach of contract against Indalex, alleging that Indalex had defectively designed and manufactured windows and doors, which resulted in water leakage that caused physical damage and personal injury. *Id.* at 420. After the insurer denied coverage on the basis that there was no "occurrence," Indalex sued the insurer. *Id.* The Superior Court of Pennsylvania held that "the *Kvaerner* holding was limited to situations 'where the underlying claims were for breach of contract and breach of warranty, and the only damage was to the [insured's] work product." *Id.* at 424. In contrast, Indalex's claims were "framed in terms of bad product," which could be construed as an "active malfunction," and not merely faulty workmanship. *Id.* The Superior Court thus held that the insurer had a duty to defend, because the underlying claims involved product-liability-based tort claims. *Id.* at 425.

Here, in its original demand, Brayman alleged that Gavco breached the subcontract and its warranties by delivering defective and nonconforming concrete to the project, particularly with respect to the drilled shafts of Piers 1, 3, 5 and 6 of the bridge structure. (ECF No. 30-1 at ¶ 9). Further, Brayman alleged that Gavco's defective concrete negatively impacted the project

---

[2] Prior to oral argument, the Court directed the parties to review *Dittman v UPMC*, 196 A.3d 1036 (Pa. 2018) to the extent that the economic loss and/or gist of the action doctrine may have applied to the claims in arbitration and potentially impacted coverage. (ECF No. 43). However, as noted in the *Indalex* case, the gist of the action doctrine has never been adopted by the Pennsylvania Supreme Court in an insurance coverage context. 83 A.3d at 426. Therefore, those doctrines, discussed in *Dittman*, are not at issue in this case, as this case involves the interpretation of the definitions within an insurance contract, separate from the sources of the duties alleged in the underlying arbitration action.

8

and caused Brayman damages in the drilled shafts of the bridge structure. *Id.* at ¶ 13. These allegations support that Gavco's defective concrete caused damage to something other than the concrete itself, namely the drilled shafts. Thus, the original and amended demand alleged a product-based tort claim, different from the holding in *Kvaerner* and the other cases cited by Westfield, which involved claims for faulty workmanship and/or were decided before *Indalex*. Further, because the policy's definitions of "property damage" are included in both the duty to defend and indemnify provisions of the policy, Brayman's allegations of an "occurrence" triggers both duties. Based upon Brayman's allegations in its original and amended demand, Brayman has sufficiently alleged that Brayman claimed against Gavco for coverage for an "occurrence" sufficient to support a duty to defend and to indemnify under the holding in *Indalex*. Therefore, Count I of the Amended Complaint has sufficiently alleged a Breach of Contract claim for Westfield's failure to defend and indemnify its insured, Gavco, based upon an "occurrence" as alleged in the original and amended demands.

### b. Exclusions

Westfield also argues that several Policy exclusions defeat coverage. However, Brayman contends that exclusions are affirmative defenses that are not properly before the Court on a motion to dismiss. "Under Pennsylvania law, while the insured has the initial burden of establishing coverage, once coverage is established, the insurer must prove an exclusion applies." *Netherlands Ins. Co. v. Butler Area Sch. Dist.*, 256 F.Supp.3d 600, 611 (W.D. Pa. 2017). Further, "disclaiming coverage on the basis of an exclusion is an affirmative defense." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996). "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense ... in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson v. Johnson*, 313 F.3d 128,

9

134–35 (3d Cir. 2002)). "However, in limited circumstances an affirmative defense may properly be raised in a Rule 12(b)(6) motion to dismiss." *Lomma v. Ohio Nat'l Life Assurance Corp.*, 283 F. Supp. 3d 240, 247 (M.D. Pa. 2017). "But when the affirmative defense 'is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" *Robinson*, 313 F.3d at 134–35 (internal citations omitted).

Here, the Amended Complaint attaches the insurance contract, which contains exclusions. (ECF No. 30-2). Further, the Amended Complaint avers that Westfield had asserted certain exclusions in its denial letters to Gavco. (ECF Nos. 30 at ¶¶ 45-47). Therefore, the Court must examine whether those exclusions, as affirmative defenses, are apparent on the face of the Amended Complaint to warrant addressing the same at this stage.[3]

First, Westfield asserts that Exclusion "b" of the Policy applies. Under this provision, the policy excludes coverage for "property damage for which the insured is obligated to pay damages of the assumption of liability under a contract or agreement." (ECF No. 30-2 at p. 11). Brayman argues that its claims were not limited to damages recoverable only under contract theories, and that it also asserted tort-based products liability claims. (ECF No. 30 at ¶¶ 22). Further, Brayman contends Exclusion "b" does not apply to coverage for claims sounding in tort. (ECF No. 30-2 at p. 11). In examining the asserted exclusion as an affirmative defense against the allegations of the underlying arbitration demands, it is not apparent on the face of the Amended Complaint that Exclusion "b" should apply in this case. Therefore, at the motion to dismiss stage, Westfield has not met its burden to provide that Exclusion "b" applies to defeat Plaintiff's Breach of Contract claim.

---

[3] The Court notes that after Brayman raised the issue of exclusions as an affirmative defense, Westfield did not counter the argument in either its subsequent filings or at oral argument.

Next, Westfield argues that Exclusion "j" applies to foreclose coverage. Under the Policy, coverage is excluded for "Property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf or performing operations, if the "property damage" arises out of those operations: or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

*Id.* at p. 13. Brayman argues that Paragraph 5 does not apply because Gavco did not perform "work" on the real property of the Project, and the alleged property damage did not arise from any operations of Gavco on such real property. (ECF No. 30 at ¶ 9). Brayman also argues that Paragraph 6 does not apply because Gavco did not perform any "work" on the property that was damaged. Further, Brayman argues that this is a defective product case and not a poor workmanship case. In examining the asserted exclusion as an affirmative defense against the underlying arbitration demands, it is not apparent on the face of the Amended Complaint that Exclusion "j" should apply in this case. Therefore, at the motion to dismiss stage, Westfield has not met its burden to prove that Exclusion "j" applies to defeat Plaintiff's Breach of Contract claim.

Westfield next argues that Exclusions "k" and "l" apply to defeat coverage. Exclusion "k" precludes coverage in cases of "Property damage" to "your product" arising out of it or any part of it." (ECF No. 30-2 at p. 14). Brayman argues Exclusion "k," which precludes coverage for damage to the product itself, does not apply because the arbitration demands were not premised on damage to Gavco's product. Instead, Plaintiff argues that the duty is premised tort-based products liability allegations involving damage to Brayman's other tangible property caused by Gavco's defective product. Thus, Brayman argues that Exclusion "k" does not apply. As regard Exclusion "l," said exclusion defeats coverage in cases of "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." *Id.* Plaintiff also argues that

Exclusion "l" does not apply, because Gavco did not perform "work;" rather, it sold a product. In examining these exclusions as affirmative defenses against the allegations of the underlying arbitration demands, it is not apparent on the face of the Amended Complaint that either Exclusion "k" or "l" apply in this case. Therefore, at the motion to dismiss stage, Westfield has not met its burden to prove that Exclusion "k" or "l" apply to defeat Plaintiff's Breach of Contract claim.

Finally, Westfield argues that Exclusion "m" of the policy defeats coverage. Under Exclusion "m," coverage is defeated for damage to impaired property or for property not physically injured. (ECF No. 30-2 at p. 14). Brayman argues that its pre-existing drilled shaft structures do not constitute "impaired property," as defined by the Policy, because the structures could not be "restored to use" by the replacement or removal of Gavco's defective concrete. (Amended Complaint, Ex. B, p. 13, ¶ 8). In examining the asserted exclusion as an affirmative defense against the allegations of the underlying arbitration demands, it is not apparent on the face of the Amended Complaint that Exclusion "m" applies in this case. Therefore, at the motion to dismiss stage, Westfield has not met its burden to prove that Exclusion "m" applies to defeat Plaintiff's Breach of Contract claim.

Accordingly, Westfield's Motion to Dismiss, with regard to Count I of the Amended Complaint, is denied, without prejudice.

### B. Bad Faith Claim

Westfield argues that Plaintiff's bad faith claim pursuant to 42 Pa.C.S. § 8371 would fail upon a determination that the it had no duty to defend or indemnify under the insurance policy. 42 Pa.C.S. § 8371 applies in any action in which an insurer is called upon "to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract." *Berg v.*

*Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1172 (Pa.Super. Ct. 2012). Because the Court has determined that Brayman has sufficiently pleaded, at this stage, the factual bases to sufficiently support its claim that Westfield breached its contractual obligations to defend and indemnify Gavco, Brayman has sufficiently pleaded a statutory bad faith claim.

Accordingly, Westfield's Motion to Dismiss, with regard to Count II of the Amended Complaint, is denied.

ORDER OF COURT

AND NOW, this 6th day of March, 2019, upon consideration of Plaintiff's First Amended Complaint (ECF No. 30), Defendant's Motion to Dismiss for Failure to State a Claim and Brief in Support (ECF Nos. 31 and 32), Plaintiff's Response in Opposition and Reply Brief (ECF No. 36), Defendant's Reply Brief (ECF No. 37), and Plaintiff's Sur-Reply Brief (ECF No. 42), the arguments of counsel, and for the foregoing reasons, Defendant's Motion to Dismiss is Denied. Defendant, Westfield, is directed to file its Answer on or before March 20, 2019.

BY THE COURT:

Marilyn J. Horan
United States District Judge